660 A.2d 614

COMMONWEALTH of Pennsylvania

v.

Anthony Spence WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Submitted April 17, 1995.

Filed June 15, 1995.

592

Anthony S. Williams, appellant, pro se.

Robert L. Steinberg, Dist. Atty., Allentown, for Com., appellee.

Before HUDOCK, SAYLOR and HESTER, JJ.

HESTER, Judge:

Anthony S. Williams appeals *pro se* from the March 14, 1994 order denying him PCRA relief. We hold that three of appellant's issues can be entertained in this second post conviction proceeding. Those issues include one raising a claim of innocence, one involving an allegation that appellant's plea agreement was breached which would constitute a manifest injustice that no civilized society could tolerate, and one involving the legality of appellant's sentence. However, in examining the merits of those three claims, we have determined that there is no genuine issue of material fact and that appellant is not entitled to PCRA relief. Accordingly, we affirm denial of appellant's second PCRA petition without a hearing.

Appellant was charged with one count each of attempted murder, theft, receiving stolen property, aggravated assault, and conspiracy and with three counts of robbery. On May 6, 1985, appellant tendered a nolo contendere plea to one count of robbery and one count of conspiracy. The record indicates that the Commonwealth, through the testimony of the victim, would have established the following:

[O]n October 15th, 1983, [at] approximately 2:15 in the morning hours, the victim in this case, an Anthony Parker, was at the intersection of Seventh and Chew.

He had made a phone call, and then he had proceeded over to the Friendly Tavern. . . .

And a car pulled up over by the phone booth. . . . The car pulled up and . . . . there [were] two people in it, the passenger, which was the Defendant and a driver.

They yelled over does anyone know where we can get some smoke? The victim went over to the car and said, I think I know where I can get some smoke. And he said can you give me a lift, I'll give you some money.

The occupants in the car then said how much money do you have? Let me see it. The victim then showed him the money he had in his pocket, four 20's, $80. They then let him into the car.

They were going to proceed down to the NCA Club at the 300 block of Ridge Avenue....

So then as soon as the victim in this case got into the back seat of the car, Your Honor, the car made a quick right into Pollard's lot.

At that time the passenger, who was [appellant] pulled out a gun, a .38 caliber gun, pointed it at the victim in this case, who was in the back seat. And they said give me your money.

At that time the victim didn't want to give up his money. He was saying it's my mother's money, it's whatever. He didn't want to give it up.

[Appellant] and the driver then rustled through his pockets. They took some Hershey Park coins, Timesaver card, and also sunglasses that were in the jacket of the victim.

And he was fighting with him. He didn't want to give up his money. Then after a few moments the car pulled back out onto Seventh Street, went down Seventh Street, over the Eighth Street Bridge.

. . . .

The victim Anthony Parker figured they were going to take him down and dump him into Trout Creek and shoot him....

At that time he then kicked the seat of the car up onto [appellant] and grabbed the hand that had the gun in it.... [T]he gun then went off. A bullet was lodged in the roof of the vehicle....

Mr. Parker was kicking at [the driver] while at the same time wrestling with the gun and which was being held by the Defendant in this case. While they were wrestling again the gun went off again and blew out the right passenger side window.

[T]he victim ... then climbed out through the window....

[H]e was in a hysterical mood or state of mind . . . as the first bullet that went off grazed his temple area. . . .

Mr. Richard Troxell . . . had heard the two shots. He came out, saw Tony was in hysterics and bleeding profusely from the head and hand, grabbed him, took him into the house.

He gave him a towel for his head . . . and then called the police. . . .

. . . . .

[Police] had a description of the car. And they also had a description of the Defendant from this incident and other incidents that occurred.

. . . . .

[After appellant was arrested,] he gave a statement to Detective Stevens. . . . [H]e said he had borrowed the car from Bob in New York, that he thought it to be stolen.

He went to the K–Mart lot to buy cigarettes on Wednesday night. This would have been October 12th, 1983. Two men that he didn't get a look at put a gun to his head and took his car. They then shot out his window.

Yesterday he found the car parked on a lot right by where he was living. And he never did try to call police because he was intimidated. And he said the car was gone for six days. . . .

Notes of Testimony ("N.T."), 5/6/85, at 27–32.

On July 22, 1985, appellant was sentenced to seven and one-half to twenty years imprisonment. Appellant filed an appeal to this court, which was dismissed based on the failure to file a brief. Dismissal was without prejudice to appellant to pursue a post conviction petition raising the same issues. The Supreme Court denied review, again without prejudice to appellant's post conviction rights.

On January 7, 1987, appellant filed a *pro se* petition under the now-repealed Post Conviction Hearing Act. Counsel was appointed and eventually filed an amended petition. On September 8, 1989, a hearing was held, and a second hearing was scheduled on November 14, 1989, since testimony was not

complete. At the November 14, 1989 hearing, appellant withdrew his PCHA petition and the supplemental, counseled petition.

On November 27, 1989, appellant filed a *pro se* petition to reinstate the prior petitions which he had voluntarily withdrawn at the November 14, 1989 hearing. The November 27, 1989 petition was denied on January 16, 1990. Appellant appealed the January 16, 1990, but that appeal also was dismissed.

Appellant then filed on January 16, 1992, and January 21, 1992, respectively, a post conviction petition and supplemental post conviction petition. The petitions were denied based on the fact that appellant no longer was in custody. We reversed, noting that appellant was serving parole which rendered him eligible for post conviction relief, and we remanded for consideration of the merits of the 1992 petitions. *See* 42 Pa.C.S.A. § 9543(a)(1)(i). A hearing was scheduled, and both appellant and his appointed counsel failed to appear at the hearing. The January, 1992 petitions then were dismissed, and this *pro se* appeal followed.

Appellant alleges that he was unable to attend the hearing on the January, 1992 petitions because he could not secure permission from his New York parole officer. He also alleges that he told counsel to appear. Appellant contends that this latest dismissal is a violation of our prior order.

We first note that the January, 1992 petitions initiated appellant's *second* post conviction proceeding. Appellant's first post conviction proceeding occurred in 1987, when he filed a PCHA petition, withdrew it, moved to reinstate it, appealed denial of reinstatement, and the appeal was dismissed.

■ With this in mind, we examine the issues raised in the 1992 petitions. In those petitions, appellant alleged: 1) the plea agreement was not adhered to by the district attorney; 2) the Commonwealth lacked jurisdiction to prosecute him since he could not be identified as the perpetrator; 3) his sentence was excessive since it was two and one-half times that recom-

mended in the sentencing guidelines; 4) his speedy trial rights were violated; 5) he was not informed of the elements of the offenses to which he was entering a nolo contendere plea; 6) his plea was induced unlawfully by promises of a lesser sentence; 7) appellant was given inaccurate information about the maximum possible sentence; and 8) his sentence was unlawful since it included a deadly weapon enhancement imposed pursuant to sentencing guidelines which were invalidated by the Pennsylvania Supreme Court.

To be eligible for relief under the PCRA, a PCRA petitioner must plead and prove the existence of four factors. 42 Pa.C.S. §§ 9543(a)(1), (a)(2), (a)(3), and (a)(4). We examine the third one first. Under section 9543(a)(3)(i) a PCRA petitioner must establish that the issues have not been waived. Waiver is defined in section 9544(b) which provides in relevant part, "[A]n issue is waived if the petitioner failed to raise it and **if it could have been raised** ... on appeal ... or in a prior proceeding actually initiated under this subchapter." (Emphasis added). Since all of appellant's issues could have been raised both on direct appeal and in the 1987 proceedings initiated under the prior post conviction proceeding act, they have been waived under section 9544(b).

Appellant nevertheless will be eligible for relief under the PCRA if one of the two exceptions to waiver contained in section 9543(a)(3) applies. Section 9543(a)(3) provides that an allegation of error that has been waived can be entertained under two conditions:

> (ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

> (iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

42 Pa.C.S. § 9543(a)(3).

Since these are appellant's second post conviction proceedings, *Commonwealth v. Ryan,* 394 Pa.Super. 373, 575 A.2d 949

(1990), provides that 42 Pa.C.S. § 9543(a)(iii) does not apply. In *Ryan,* we held:

> In the present case, appellant could have raised all of the issues presented herein in his prior PCHA petition. Accordingly, the issues have been waived under section 9544. The waiver in this instance results from appellant's failure to raise the issues in his prior post conviction proceedings. Since the waiver was not during pretrial, trial, post-trial or direct appeal proceedings, section 9543(a)(3)(iii) is not applicable. Accordingly, appellant has waived the issues presented herein unless 9543(a)(3)(ii) applies.

*Id.,* 394 Pa.Super. at 378, 575 A.2d at 951.

Furthermore, our Supreme Court recently has provided guidance on proper interpretation of the PCRA waiver provisions, and its decision provides support for the decision in *Ryan. Commonwealth v. Christy,* 540 Pa. 192, 656 A.2d 877 (1995). *Christy* involved the defendant's first petition for post conviction relief, and the Court interpreted section 42 Pa.C.S. § 9543(a)(3). It announced that an allegation that prior counsel was ineffective for failing to raise an issue will overcome the waiver provisions of the PCRA as long as the appellant had a constitutional right to counsel at the stage in the state proceedings where counsel's ineffectiveness resulted in the waiver. Since a defendant has a right to counsel at trial and on direct appeal, the Court held that ineffective assistance of counsel will excuse waiver as to claims of ineffectiveness of counsel at trial and on direct appeal. It also observed that there is no constitutional right to counsel in a state collateral proceeding. Thus, if waiver results from prior counsel's stewardship in a post conviction proceeding, waiver is not overcome under section 9543(a)(3)(iii), and the defendant must meet the standard announced in section 9543(a)(3)(ii).

Section 9543(a)(3)(ii) applies only to issues relating to a defendant's innocence. *Commonwealth v. Dukeman,* 413 Pa.Super. 397, 605 A.2d 418 (1992).

The waiver provisions of the PCRA must be interpreted concurrently with our Supreme Court's pronouncement in

*Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988). *See Commonwealth v. Ryan, supra,* 394 Pa.Super. at 376, 575 A.2d at 950–51, where we applied *Lawson* to PCRA proceedings and stated:

> [S]ince this is appellant's second petition for post-conviction relief, it "will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred." *Commonwealth v. Lawson,* 519 Pa. 504, 513, 549 A.2d 107, 112 (1988); *see also Commonwealth v. Blackwell,* 384 Pa.Super. 251, 558 A.2d 107 (1989) (applying *Lawson* standard of review to second or subsequent petitions filed under the PCRA). This standard is met if the petitioner can demonstrate either that the proceedings resulting in his conviction were so unfair that a miscarriage of justice which no civilized society can tolerate occurred or that he is innocent of the criminal charges.

■ Under this case law, in a second or subsequent post conviction proceeding, all issues are waived except those which implicate a defendant's innocence or which raise the possibility that the proceedings resulting in conviction were so unfair that a miscarriage of justice which no civilized society can tolerate occurred. There also is a third exception to the waiver provisions: issues involving the legality of a sentence since those types of issues never may be waived. *Commonwealth v. Yount,* 419 Pa.Super. 613, 615 A.2d 1316 (1992) (legality of sentence issue considered in third post-conviction proceeding); *see generally Commonwealth v. Shannon,* 530 Pa. 279, 608 A.2d 1020 (1992); *Commonwealth v. Anderson,* 434 Pa.Super. 309, 643 A.2d 109 (1994).

■ Some of appellant's claims do not meet these standards. Those claims include that appellant was not informed of the elements of the crimes to which he pled nolo contendere, his speedy trial rights were violated, the sentence imposed was an abuse of discretion, and the sentence imposed exceeded the guidelines. These allegations neither relate to appellant's innocence nor do they raise the possibility that the proceedings were so unfair that his conviction resulted from a

miscarriage of justice which no civilized society could tolerate. Therefore, they will not be entertained herein.

However, appellant's allegation that he could not be identified as the perpetrator does raise a colorable issue relating to his innocence and will be entertained on the merits. Nonetheless, we conclude that it is absolutely refuted by the record of his plea. The victim survived the attack and identified appellant as the perpetrator. Indeed, appellant admits that the victim identified him at the preliminary hearing. Furthermore, this allegation actually relates to the sufficiency of the evidence that would have been presented against appellant at trial. It is established that any issue relating to the sufficiency of the evidence is waived by entry of guilty plea and is not subject to attack in a post conviction proceeding.[1] *Commonwealth v. Martinez*, 372 Pa.Super. 202, 539 A.2d 399 (1988) (after entry of guilty plea, in a post conviction setting, only cognizable issues relate to validity of the plea and legality of the sentence). Thus, there is no issue of genuine fact that appellant is not entitled to PCRA relief on the basis of this claim.

Three of appellant's issues are related. These include the allegations that the prosecutor failed to abide by the terms of the plea agreement, that he was promised a lesser sentence than the one which he received, and that he never was informed of the sentence he might receive prior to pleading nolo contendere. Certainly, if the prosecutor failed to adhere to the terms of the plea agreement, this would provide grounds for PCRA relief as it would be a miscarriage of justice for a person to relinquish cherished constitutional rights based on a promise that was not kept. *See generally Commonwealth v. Daniels*, 440 Pa.Super. 615, 656 A.2d 539 (1995) (if prosecutor fails to abide by the terms of a plea agreement, defendant must be allowed to withdraw his plea). Thus, we will entertain the allegation that the plea agreement

1. A plea of nolo contendere is treated in the same manner as a guilty plea in terms of its effect upon a particular case. *Commonwealth v. Jackson*, 376 Pa.Super. 433, 546 A.2d 105 (1988); *Commonwealth v. Thomas*, 351 Pa.Super. 423, 506 A.2d 420 (1986).

was breached in that appellant did not receive his promised sentence and was not informed of the sentence he would receive prior to tendering his plea. We examine the record of appellant's plea colloquy to determine the merits of this claim. The plea agreement was as follows:

MR. WALDRON: Your Honor, this is Case No. 1694 of 1983, Commonwealth v. Anthony Spencer Williams. Anyone in the courtroom at all that has anything to do with this case, please come forward.

Your Honor, this is going to be a nolo contendere plea to Count No. II, robbery as a felony one, nolo contendere to Count number VIII, conspiracy to commit robbery as a felony one.

In addition, Your Honor, we would ask for the Deadly Weapon Enhancement. And there's no agreement as to concurrency here, Your Honor. We would leave that as the concurrency or consecutiveness up to Your Honor.

MR. BRUNNABEND: We should make it clear the Commonwealth is not taking any position and will not argue for any consecutive sentence at this point. And we'd also make it clear as far as the Deadly Weapon Enhancement that it's not the mandatory sentence for any weapon.

THE COURT: It's 12 plus 24, not the 5 year.

MR. WALDRON: That's correct.

N.T., 5/6/85, at 2–3. Thus, the agreement was that appellant would tender an open plea of nolo contendere to robbery and conspiracy, graded as felonies of the first degree, and in exchange, the Commonwealth nol prossed attempted murder, theft, receiving stolen property, aggravated assault, and two counts of robbery. The Commonwealth also indicated that while it would seek a deadly weapon enhancement, it promised that it would make *no other sentencing recommendations*. This was reiterated when the district attorney stated that "the Commonwealth has not promised the Defendant anything regarding sentence, length of sentence, months, years." *Id.* at 11. The Commonwealth abided by this agreement at sentencing and made no sentencing recommendation

asking only that the enhancement be applied. N.T., 7/22/85, at 3–4.

Furthermore, appellant pled nolo contendere *knowing* that he was entering an open plea and could receive a sentence of up to twenty years in prison in addition to the twelve to twenty-four month enhancement for deadly weapons:

> THE COURT: We want Mr. Williams to understand that in entering this plea that what we intend to do is we will order a presentence investigation and report so we can learn as much as we possible can about you and about what happened here.
>
> And then on a given day you will come back here, and the Court has the power to sentence you. I don't know what that sentence is going to be because we'll have to study that report, everything that we hear, understand?
>
> But the Court has the power to sentence you to a sentence of 10 to 20 years on the robbery charge. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, on the offense of conspiracy to commit robbery, 10 to 20 years. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And there is a what is known under the law as a Deadly Weapon Enhancement. That is, the Court has the power to sentence you to an additional 12 to 24 months. Do you understand that?
>
> THE DEFENDANT: Twelve to twenty-four months.

N.T., 5/6/85, at 6–7.

There is no doubt that several times during the colloquy, appellant told the court that he expected to receive a sentence of twelve to twenty-four months imprisonment. However, the court made absolutely clear that that was not going to happen, informing appellant repeatedly that he was tendering an open plea of nolo contendere to the charges and that he could receive a sentence of up to twenty years imprisonment. N.T., 5/6/85, at 11, 14. The plea court also stated clearly that if appellant did not understand this or did not want to plead nolo

contendere under the circumstances, appellant could proceed to trial that afternoon. *Id.* at 40. Appellant conferred twice with his attorney so that the attorney could explain precisely what the court meant. *Id.* at 16, 60. After the court determined that appellant graduated from high school and understood the sentencing possibilities, appellant's plea of nolo contendere was accepted. *Id.* at 26, 39–40. Appellant was sentenced to seven and one-half to twenty years imprisonment. Accordingly, there is no genuine issue of material fact in that the record establishes the plea agreement was not breached, appellant did know the sentence he possibly could receive, and appellant was not promised any sentence other than one that was less than twenty years imprisonment, which he received.

Appellant also alleges that his sentence was unlawful since it included a deadly weapon enhancement struck down by our Supreme Court in *Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775 (1987). Appellant is not entitled to relief on this basis since our Supreme Court announced that the ruling in *Sessoms* could be applied only if the issue properly was preserved at all stages of the proceeding, including in the trial court. *Id.,* 516 Pa. at 380 n. 2, 532 A.2d at 782 n. 2. Thus, *Sessoms* will not be applied in this collateral proceeding.

■ Furthermore, prior counsel's actions in failing to raise this issue in the trial court and on direct appeal will not be deemed to be ineffective assistance. It is axiomatic that counsel will not be found ineffective for failing to predict a change in the law and in failing to preserve an issue that is not meritorious under the law in effect when counsel's action occurred. *Commonwealth v. Christy,* 540 Pa. 192, ——, 656 A.2d 877 (1995); *Commonwealth v. Pizzo,* 529 Pa. 155, 602 A.2d 823 (1992); *Commonwealth v. White,* 515 Pa. 348, 528 A.2d 596 (1987); *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 (1977); *Commonwealth v. Rowe,* 411 Pa.Super. 363, 601 A.2d 833 (1992). Appellant was sentenced two years prior to the ruling in *Sessoms.*

Since appellant's allegations are refuted by the record, there are no genuine issues concerning any material fact, and appellant is not entitled to PCRA relief, we affirm the trial court's dismissal of the 1992 petitions without a hearing. *Commonwealth v. Banks*, 540 Pa. 143, ——, 656 A.2d 467 (1995); Pa.R.Crim.P. 1507.

Order affirmed.